# United States District Court, Northern District of Illinois

 ORIGINAL

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3452 | **DATE** | 12/4/2000 |
| **CASE TITLE** | Kathleen B. McGuinness vs. Kenneth S. Apfel | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment [9-1] is granted and Defendant's motion for summary judgment [10-1] is denied, and the case is reversed and remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. Section 405(g) for further proceedings consistent with this opinion. The Commissioner is ordered to readjudicate Claimant's claim of disability beginning at step four.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 5 2000 date docketed | |
| | Docketing to mail notices. | | | 12 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 12/4/2000 | |
| DK | courtroom deputy's initials | FILED FOR DOCKETING 00 DEC -4 PM 4:37 | date mailed notice | |
| | | Date/time received in central Clerk's Office | DK mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN B. McGUINNESS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 00 C 3452 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Morton Denlow |
| KENNETH S. APFEL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court for a review of the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying Plaintiff, Kathleen B. McGuinness ("Claimant" or "McGuinness"), Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). McGuinness claims that she has been disabled since November 24, 1992 due to deep vein thrombosis in her left leg.

McGuinness seeks judicial review of the Commissioner's final decision. This matter comes before the Court on cross-motions for summary judgment. The issue to be decided is whether substantial evidence in the record supports the finding of the Administrative Law Judge ("ALJ") that McGuinness is not disabled under the Act. For the reasons set forth below, the Court reverses the ALJ's decision and remands the case to the Commissioner for further proceedings consistent with this opinion.

## I. PROCEDURAL BACKGROUND

McGuinness applied for benefits on January 27, 1997 at the age of thirty-five. (R. at 75-78). This application was denied on April 21, 1997, and McGuinness filed for reconsideration. (R. at 64-68). The request was denied upon reconsideration on September 5, 1997. (R. at 70-72). McGuinness then requested a hearing before an ALJ. (R. at 73). A hearing before ALJ John L. Mondi was held on August 18, 1998, at which the Claimant and Clifford Brady, a Vocational Expert ("VE"), testified. (R. at 37-61). The ALJ rendered a decision denying benefits on September 21, 1998. (R. at 16-20). The Appeals Council denied McGuinness' request for review of the ALJ's decision on April 12, 2000. (R. at 5-6). McGuinness then initiated this civil action for judicial review of the Commissioner's final decision.

## II. THE DECISION OF THE ALJ AND APPEALS COUNCIL

The ALJ found that while McGuinness has a severe impairment, she has the residual functional capacity to return to past work and is not disabled. (R. at 16). This determination was based on the ALJ's finding that McGuinness was capable of performing work that did not require lifting and carrying more than twenty (20) pounds occasionally or ten (10) pounds frequently. (R. at 20). The ALJ found there was no limitation on McGuinness' ability to sit and that she can stand and walk for prolonged periods of time. (*Id.*) Therefore, the ALJ concluded that McGuinness was able to perform her past relevant work as a collector and bookkeeper. (*Id.*)

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied McGuinness' request for review. (R. at 5-6). In denying this request, the

Appeals Council concluded that the additional evidence submitted by the Claimant in support of her application for review did not provide a basis for changing the ALJ's decision. (*Id.*) The additional evidence included an unsigned letter from Dr. Hisham Bassiouny, McGuinness' treating physician, opining that McGuinness was permanently disabled and unable to stand or sit for uninterrupted, prolonged periods without elevating her legs every one-to-three hours. (R. at 241).

### III. STANDARD OF REVIEW

Judicial review of a Commissioner's final decision is governed by 42 U.S.C. § 405(g) which provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ..." An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). Under such circumstances, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Secretary of the Dept. of Health & Human Serv.*, 983 F.2d 815, 816 (7th Cir. 1993). A reviewing court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching its decision and whether there is substantial evidence in the record to support his findings. *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

3

401, 91 S.Ct. 1420, 1427 (1971). The court may reverse the Commissioner's decision only if the evidence "compels" reversal, not merely because the evidence supports a contrary decision. *INS v. Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 815 n.1 (1992). The Act gives a court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## IV. ESTABLISHING A DISABILITY

Disability insurance benefits are available only to claimants who can establish a "disability" under the Act. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). The claimant must show that she is suffering from a medically determinable physical or mental impairment that can be expected to result in death or which has lasted or is expected to last for at least twelve months, and that renders the claimant unable to engage in *any* substantial gainful employment. 42 U.S.C. § 423(d)(1)(A) (emphasis added). The factual determination of disability follows a five-step analysis set forth in the Social Security Regulations: (1) is the claimant presently employed? (2) is the claimant's impairment severe? (3) does the impairment meet or equal one of the impairments specified in 20 C.F.R. § 404, Subpt. P., App. 1? (4) is the claimant unable to perform past relevant work? and (5) does the claimant's age, education, and past work experience enable her to do other work? 20 C.F.R. § 404.1520; *see also Brewer*, 103 F.3d at 1391.

The Claimant bears the burden of establishing a disability in steps one through four of the five-step analysis. *Id.* If the claimant satisfies her burden of proof on each of the first four steps in the analysis, the burden shifts to the Commissioner to show that the Claimant has the ability to engage in another type of gainful employment. *Id.*

Applying the five-step evaluation, the ALJ made the following factual determinations. First, the ALJ found that the Claimant had not engaged in substantial gainful employment since November 24, 1992. (R. at 20). Second, the ALJ found that Claimant's impairments were severe. (*Id.*) Third, the ALJ found that the Claimant did not have an impairment that was listed in 20 C.F.R. § 404.1520(d)(2000) (*Id.*) At step four, the ALJ found that the Claimant's impairments did not prevent her from performing her past relevant work as a collector and bookkeeper. (*Id.*) In the alternative, the ALJ found that even if the assessment of the treating physician was accepted, there were still a significant number of jobs which Claimant could perform. (R. at 19). Therefore, the ALJ concluded that the Claimant was not disabled within the meaning of the Act. (R. at 20).

## V. THE ALJ'S DECISION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

The ALJ concluded that McGuinness was capable of returning to her former job as a collector and bookkeeper finding that "there is no limitations on her ability to sit and she can also stand and walk for prolonged periods." (R. 20). The evidence does not support such a conclusion. The ALJ improperly disregarded the medical assessment of McGuinness' treating physician that Claimant could not engage in prolonged standing, sitting, or walking, and

5

substituted his own lay medical judgment. (R. at 19). As a result, the ALJ's finding that McGuinness was able to return to her past relevant work is not supported by substantial evidence and the alternative finding is also flawed.

### A. THE ALJ IMPROPERLY DISREGARDED THE MEDICAL ASSESSMENTS OF MCGUINNESS' TREATING PHYSICIAN

The ALJ should not have disregarded the conclusions of Dr. Bassiouny, McGuinness' treating physician. The ALJ disregards the opinions of Dr. Bassiouny by stating that it was not supported by objective evidence and that it was inconsistent with assessments made by the reviewing physicians. (R. at 19). To the contrary, Dr. Bassiouny's opinion is entitled to controlling weight because his opinion is consistent with laboratory reports and clinical data contained in the record and is not inconsistent with assessments made by the state's two examining physicians. *Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000); 20 C.F.R. § 404.1527(d)(2).

Furthermore, where the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must determine what weight to give it by considering those factors set forth in 20 C.F.R. § 404.1527(d)(2)(i) and (d)(2)(ii). These factors include the length and frequency of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship. The ALJ did not consider the length, frequency, nature or extent of Dr. Bassiouny's treatment of the Claimant. (R. at 19). Therefore, it was improper for the ALJ to have rejected Dr. Bassiouny's opinions in their entirety.

### 1. Dr. Bassiouny's Medical Opinions Are Supported by Objective Evidence

A full range of "sedentary" work requires the ability to sit for "prolonged" periods, and a full range "light" work requires the ability to stand and/or walk for "prolonged" periods. SSR 83-12 and SSR 96-9p. A full range of sedentary work requires the ability to sit for approximately six hours in an eight-hour workday, while a full range of light work requires the ability to stand and/or walk for about six hours in an eight-hour day. SSR 83-10. Substantial evidence does not support the ALJ's finding that McGuinness could do (1) the prolonged sitting that a full range sedentary work requires; (2) the prolonged standing and/or walking that a full range of light work requires; (3) the total amount of sitting that a full range of sedentary work requires; and (4) the total amount of standing and/or walking that a full range of light work requires.

Dr. Bassiouny, a cardiovascular surgeon at the University of Chicago Hospitals, has been treating McGuinness since April 1993. Since April 1993, Dr. Bassiouny has performed six venous doppler ultrasounds and duplex scans of Claimant's legs. (R. at 161, 170, 180, 183, 190, 224). Each test, the last of which was performed in July 1998, revealed that the veins in Claimant's left leg were totally or near totally obstructed. (*Id.*) In addition, Dr. Bassiouny's documented physical observations support this conclusion. During Dr. Bassiouny's initial exam, he noted that Claimant's left leg was larger than her right leg and "tender to palpation, motor and sensory contact." (R. at 157). Similar observations were made and documented in July 1993 and December 1996. (R. at 168, 186).

7

In May 1993, Dr. Bassiouny reported that McGuinness could not do full-time sedentary work. (R. at 163-64). In January and March 1994, Dr. Bassiouny stated that McGuinness could not stand and/or walk for even one hour in an eight-hour workday, and that she could sit for only one to three hours in an eight-hour workday. (R. at 173-76). In March 1997 and August 1997, Dr. Bassiouny informed the agency that McGuinness could neither sit, stand, nor walk for a prolonged or extended period of time. (R. at 185, 206).

Instead of giving treating physician Dr. Bassiouny's consistent opinions deserved respect, the ALJ rejected Dr. Bassiouny's opinions on the ground that they were "not supported by objective signs and findings." (R. at 19). On the contrary, Dr. Bassiouny's opinions were supported by consistent abnormalities on doppler ultrasound and duplex scan of McGuinness's left leg showing deep vein thrombosis. (R. at 161, 180, 190, 224), as well as by physical examinations showing swelling. (R. at 168, 186). Although the ALJ was the agency's fact-finder, 42 U.S.C. § 405(h), that role did not confer upon the ALJ the authority to "play doctor" and make his own independent medical finding, *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

Instead of relying on his own lay medical judgment, the ALJ should have respected Dr. Bassiouny's substantiated reports. 20 C.F.R. § 404.1527(d)(2)(2000); *Shramek*, 226 F.3d at 814 (holding that an ALJ improperly rejected a treating doctor's opinion). The ALJ also should have given more weight to Dr. Bassiouny's reports because he is a specialist. 20 C.F.R. § 404.1527(d)(5)(2000) ("We generally give more weight to the opinion of a specialist about

medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

Along the same lines, instead of relying on his own lay medical judgment, the ALJ should have obtained medical expert testimony. See *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000) ("No medical expert testified, although the procedure for adjudicating social security disability claims departs from the adversary model to the extent of requiring the administrative law judge to summon a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled.").

Alternatively, if the ALJ believed that Dr. Bassiouny's reports did not appear to be based on medically acceptable clinical and laboratory diagnostic techniques, the ALJ was required to contact Dr. Bassiouny to obtain clarifying information before discarding Dr. Bassiouny's reports. 20 C.F.R. § 404.1512(e) (2000).

There is no evidence that the ALJ had any specialized training in interpreting the results of doppler ultrasounds or duplex scans. Therefore, the ALJ was working outside the scope of his job as fact-finder and was "playing doctor" when he took it upon himself to analyze the Claimant's test results and reach his own conclusions about their relationship to Dr. Bassiouny's medical opinions. *Rohan*, 98 F.3d at 970. Instead of relying on his own lay medical judgment, the ALJ should have consulted a physician or obtained expert medical testimony before reaching such a conclusion. *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000).

### 2. Dr. Bassiouny's Medical Opinions Are Consistent with Assessments Made by the Reviewing Physicians

In the Peripheral Vascular Reports supporting McGuinness' disability claim, Dr. Bassiouny concluded that McGuinness was "indefinitely disabled from [job] positions that require sitting, standing, [and] walking for prolonged period of time" and "limited in [her] ability to stand, sit or ambulate for extended periods of time." (R. at 185, 206). This functional assessment is consistent with the two functional assessments made by the state examining physicians that same year. In April 1997, Dr. Jose L. Gonzalez noted that the Claimant "cannot do sitting, standing, or walking for prolonged periods of time." (R. at 204). In August 1997, a second assessment reported that the Claimant had "restricted activity, limited ability to stand, sit or work for extended periods." (R. at 214). Dr. Bassiouny's opinions about the Claimant's functional capacity were virtually identical to those made by the reviewing physicians. Based on the above, the ALJ clearly erred in finding "the limitations reported by the treating physicians are not only not supported by objective findings, but they are also inconsistent with the assessment of the reviewing physicians ..." (R. at 19). Moreover, all of these assessments plainly contradict the ALJ's finding that there was no limitation on the Claimant's ability to sit, stand, or walk for prolonged periods of time. (R. at 20)[1].

---

[1] Ironically, on September 5, 1997, the Commissioner in denying the Claimant's request on reconsideration stated: "The medical evidence shows that you have had difficulty with your leg and you still have difficulty sitting, standing or walking for any extended period of time." (R. at 70).

10

## B. THE ALJ IMPROPERLY DISCREDITED THE CLAIMANT'S TESTIMONY REGARDING HER IMPAIRMENTS AND THEIR IMPACT ON HER ABILITY TO WORK

The ALJ should not have discredited the Claimant's testimony concerning her impairments and their impact on her ability to return to her past relevant work as a collector and bookkeeper. The ALJ's primary basis for discrediting the Claimant's testimony is the Claimant's irregular use of prescribed medications. (R. at 17-18). An ALJ's credibility determination will usually not be set aside unless it is "patently wrong." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). However, when such a determination is based on objective factors, as it was in this case, the court has greater freedom to review the ALJ's credibility determination. *Id.* Because there is objective evidence in the record legitimizing the Claimant's discontinuance of certain prescriptions, her testimony does not appear to be incredible on the basis reasoned by the ALJ. Moreover, the ALJ did not find that had the Claimant followed her prescribed treatment, she would have been able to return to work. *Shramek v. Apfel*, 226 F.3d 809, 812-13 (7th Cir. 2000). "Essential to a denial of benefits pursuant to Section 404.1530 is a finding that if the claimant followed her prescribed treatment she could return to work." *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985). Finally, the ALJ ignores the fact that Claimant's testimony is consistent with recommendations made by her treating physician.

As a basis for discrediting the Claimant's testimony, the ALJ first points to the Claimant's testimony that she stopped taking Elavil (Amitriptyline).[2] (R. at 18). The Claimant testified that she has been taking Amitriptyline off and on since 1996. (R. at 46). At the hearing before the ALJ, the Claimant testified that she had recently stopped taking the medicine because she was having a dilation and curettage ("D&C") to remove fibroids from her uterus. (*Id.*) She resumed taking the medicine in mid-July 1998 after the surgery. (*Id.*) In addition, the Claimant testified that she had stopped the medication on a temporary basis because its side effects interfered with her ability to do things around the house. (*Id.*) However, the Claimant noted that she never stopped taking the medicine permanently and inevitably would start taking it again. (*Id.*) The Claimant cannot be faulted for suspending medication on a temporary basis to undergo surgery.

There is nothing in the record to suggest that, but for these temporary stoppages, she would have been able to return to work. The Claimant was taking this medicine for sleeplessness and not as treatment for the deep vein thrombosis for which she is claiming disability.

Secondly, the ALJ discredited the Claimant's testimony on the basis of her no longer taking Coumadin for the treatment of the deep vein thrombosis. The Claimant was taken off Coumadin in 1996 by her doctor. (R. at 232). Again, the Claimant cannot be faulted for

---

[2] Amitriptyline is an anti-depressant used to treat mental depression and sleep disorders. *Stedman's Medical Dictionary, 26th Ed.*

12

following her doctor's orders.

Lastly, in support of his credibility determination, the ALJ points out that many of the Claimant's medications were given to her on a sample basis thereby indicating only a recent worsening of her total condition. (R. at 18). The medications to which the ALJ is referring were those prescribed by Dr. Sapna Rathi only to treat the Claimant's headaches. (R. at 233). The Claimant testified that the deep vein thrombosis was the only health problem that was interfering with her ability to work. (R. at 44). After the ALJ asked whether she had additional health problems, the Claimant responded that she had been having very severe headaches "of late." (*Id.*) Accordingly, the Claimant's use of prescriptions on a sample basis cannot be seen as an appropriate basis for discrediting the Claimant's testimony.

Furthermore, the ALJ ignored medical evidence in the record corroborating the Claimant's testimony that she needed to elevate her leg. When the Claimant was hospitalized at the onset of her condition in late 1992, she was told to elevate her left leg when she was in a supine or sitting position. (R. at 148). There is no evidence in the record that the condition for which this recommendation was made ever improved. When the recommendation was made, a venous doppler ultrasound revealed a "complete occlusion of the deep veins of the left leg." (R. at 145). A similar observation was made by Dr. Bassiouny just prior to the hearing before the ALJ. A venous doppler ultrasound run in July 1998 revealed a "continued existence of chronic deep vein thrombus in the left ... veins." (R. at 224). Therefore, the Claimant cannot be faulted, and further discredited, for continuing to believe that she should keep her leg

elevated. Moreover, if the ALJ doubled Claimant's statement that she was instructed to elevate her leg (R. at 133), the ALJ could have contacted Dr. Bassiouny.

## VI. THE ALTERNATIVE STEP-FIVE FINDING IS INSUFFICIENT

This ALJ's opinion is unclear as to whether it intended to include an alternative step-five finding. In the formal findings, the ALJ made a four-step decision. (R. at 20). In the text of the decision, the ALJ may have made an alternative step-five finding. (R. at 19). This finding that jobs in significant numbers exist for Claimant, even if Dr. Bassrouny's medical assessment is accepted, is insufficient because the ALJ does not identify the jobs. Furthermore, the VE testified that if the Claimant's testimony was fully credited, Claimant would not be able to perform any work. (R. at 58). Under these circumstances, the record is insufficient to support an alternative step-five conclusion. This issue should be clarified on remand.

## VII. CONCLUSION

For the foregoing reasons, **Plaintiff's motion for summary judgment is granted and Defendant's motion for summary judgment is denied**, and the case is reversed and remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The Commissioner is ordered to readjudicate Claimant's claim of disability beginning at step four.

**SO ORDERED THIS 4th DAY OF DECEMBER, 2000.**

_____
**MORTON DENLOW**
**United States Magistrate Judge**

**Copies Mailed To:**

Thomas R. Nash
Thomas R. Nash, P.C.
150 N. Wacker Drive, Suite 3040
Chicago, Illinois 60606
**Attorney for Plaintiff**

Young B. Kim
Assistant U.S. Attorney
Everett McKinley Dirksen Building
219 S. Dearborn St., 5th Floor
Chicago, Illinois 60604

Aylon M. Schultz
Assistant Regional Counsel
Social Security Administration
200 West Adams Street, 30th Floor
Chicago, Illinois 60606
**Attorneys for Defendant**